**Reversed and Memorandum Opinion filed June 29, 2021.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-19-00897-CV

---

**CHAPPELL HILL SAUSAGE COMPANY, Appellant**

**V.**

**JOHN DURRENBERGER, IN HIS OFFICIAL CAPACITY AS WASHINGTON COUNTY JUDGE; DON KOESTER, CANDICE BULLOCK, KIRK HANATH, AND JOY FUCHS, EACH IN HIS OR HER OFFICIAL CAPACITY AS A WASHINGTON COUNTY COMMISSIONER; ROSS MCCALL IN HIS OFFICIAL CAPACITY AS WASHINGTON COUNTY ROAD AND BRIDGE DEPARTMENT ENGINEER; AND MARK MARZAHN IN HIS OFFICIAL CAPACITY AS WASHINGTON COUNTY FLOODPLAIN COORDINATOR AND ENVIRONMENTAL HEALTH DIRECTOR, Appellees**

---

**On Appeal from the 335th District Court**
**Washington County, Texas**
**Trial Court Cause No. 36689**

---

## MEMORANDUM OPINION

Appellant Chappell Hill Sausage Company (the landowner) filed suit against

seven Washington County officials[1] (county officials) in their official capacities for their ultra-vires failures to maintain a culvert in a county road crossing its property, as well as for not complying with provisions of the Water Code. The trial court granted the county officials' plea to the jurisdiction. In this interlocutory appeal, the landowner argues that the trial court erred in dismissing its claim against the county officials because the county officials are not protected by governmental immunity from ultra-vires claims for prospective injunctive relief. We agree with the landowner. However, subject-matter jurisdiction is a fundamental prerequisite that cannot be waived and can be raised for the first time on appeal by the parties or the court, and the landowner had the burden to demonstrate the subject-matter jurisdiction of the trial court. Concluding that the landowner's pleadings neither affirmatively established the trial court's jurisdiction nor conclusively negated the trial court's jurisdiction, we reverse the trial court's order.

## I.    BACKGROUND

The landowner owns real property in Washington County, which it uses for agricultural purposes. The landowner's property is situated on the banks of New Year Creek, a tributary of the Brazos River. Historically, rainfall in the area drains off the land through a natural tributary into New Year Creek. A culvert installed and maintained by the county allows the water to drain through this natural tributary under a county road crossing the northern edge of the landowner's property. In 2014 and 2015, the area experienced unusual rainfall, which resulted in standing water on the landowner's property as well as on neighboring land. The

---

[1] John Durrenberger, in his official capacity as Washington County Judge; Don Koester, Candice Bullock, Kirk Hanath, and Joy Fuchs, each in his or her official capacity as a Washington County Commissioner; Ross McCall in his official capacity as Washington County Road and Bridge Department Engineer; and Mark Marzahn in his official capacity as Washington County Floodplain Coordinator and Environmental Health Director.

landowner attributes the standing water to a blockage in the culvert or alternatively to the county's installation of a culvert with inadequate capacity. As a result of the standing water, the landowner's neighbor dug a trench which has caused significant erosion to the landowner's property.

In 2019, the landowner sued this neighbor for various tort claims.[2] The landowner also brought suit against the county officials seeking prospective injunctive relief in the form of an injunction requiring the county officials to maintain the culvert. Specifically, the landowner claimed the county officials engaged in ultra-vires acts in violation of Water Code section 11.093(a), and engaged in unauthorized diversion, impoundment, and use of surface water, as well as the impairment of the landowner's riparian rights. Tex. Water Code Ann. §§ 11.093(a), .121. The county officials responded and filed a plea to the jurisdiction, which was granted by the trial court. The landowner filed this accelerated interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8).

## II. ANALYSIS

### A. Governmental immunity and ultra-vires claims

In Texas, sovereign immunity deprives a trial court of subject–matter jurisdiction when the state or certain governmental units have been sued unless the state consents to suit. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Governmental immunity affords similar protection to subdivisions of the state, such as counties, cities, and school districts. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) (recognizing that

---

[2] This neighbor was named as a defendant in the underlying lawsuit, but is not and cannot be an appellee in this interlocutory appeal because the neighbor was not affected by the trial court's order granting the plea to the jurisdiction.

sovereign immunity and governmental immunity are distinct concepts although courts often use the terms interchangeably). Immunity "shield[s] the public from the costs and consequences of improvident actions of their governments." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).

Even if a governmental entity's immunity has not been waived by the legislature, a suit may be brought against a governmental official if the official engages in ultra-vires conduct. *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). A suit asserting that a government officer "acted without legal authority" and seeking to compel the official "to comply with statutory or constitutional provisions" is an ultra-vires suit. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Those suits are not barred by governmental immunity because they "do not attempt to exert control over the state." *Id*. Ultra-vires suits do not seek to alter government policy, but rather to enforce existing policy. *Id.*

Ultra-vires claims depend on the scope of a public official's authority. *McRaven*, 508 S.W.3d at 234. Plaintiffs in ultra-vires suits must "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 372. "Ministerial acts" are those when "the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015) (quoting *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994)). Conversely, "discretionary acts" are those that "require the exercise of judgment and personal deliberation." *Id*.

## B.    Standard of review

Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case. *Texas Ass'n of Bus. v.*

*Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). The absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction. *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex. 1999) (per curiam). A plea to the jurisdiction is a procedural vehicle used to challenge the court's subject-matter jurisdiction over a claim. *Miranda*, 133 S.W.3d at 232.

We review a plea challenging the trial court's jurisdiction de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). In reviewing a plea to the jurisdiction, we do not consider the merits of the underlying claim; we consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). When a plea to the jurisdiction challenges the claimant's pleadings, we determine whether the claimant pleaded facts that affirmatively demonstrate the trial court's jurisdiction, construing the pleadings liberally and in favor of the claimant. *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the claimant should be afforded the opportunity to amend. *Id*. at 226–27. However, if the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the claimant an opportunity to amend. *Id*. at 227.

**C.      The landowner's pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction**

In their plea to the jurisdiction, the county officials do not address the merits of the landowner's ultra-vires claims. The county officials state that the landowner's claims are "in essence, a claim against Washington County, Texas, a political subdivision of the State of Texas." This is correct, though the supreme

court has confirmed that a plaintiff must bring ultra-vires claims against a government official acting in his or her official capacity. *Heinrich*, 284 S.W.3d at 373. The landowner here properly brought its ultra-vires claims against the public officials in their official capacities.

Despite the fact that the landowner did not plead any tort causes of action against the county officials, the county officials state without supporting authority that the landowner's claims sound in tort. The county officials further argue that the landowner did not establish a waiver under the Texas Tort Claims Act, nor did the landowner provide the notice required by the Act. Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001–.109. Had the landowner asserted a premises-defect claim, a negligence claim, or some other tort cause of action seeking monetary damages, we would agree. However, the landowner did not assert any such claim against the county officials.

Based on the live pleadings, the landowner has asserted ultra-vires claims against the county officials which do not require a waiver of immunity under the Texas Tort Claims Act. Though the plea to the jurisdiction incorrectly focuses on the lack of waiver under the Act, we construe the county officials' plea to the jurisdiction as generally challenging the jurisdictional allegations in the live pleadings. *Miranda*, 133 S.W.3d at 226. ("When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause."). Our focus is on whether the landowner carried its burden to show the trial court had jurisdiction. *See id*. at 226–27; *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 100 (Tex. 2012).

### 1. The landowner must demonstrate standing

In order for the trial court to have subject-matter jurisdiction, the landowner

must have standing. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012) ("In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court."). Though the county officials do not raise this issue in their plea to the jurisdiction, standing as a prerequisite for jurisdiction cannot be waived and may be raised for the first time on appeal by the parties or the court. *Texas Air Control Bd.*, 852 S.W.2d at 445–46. As described in *Meyers v. JDC/Firethorne, Ltd.*, the test for standing requires three elements: (1) the plaintiff must have suffered an injury; (2) the alleged injury must be "fairly traceable" to the defendant's conduct; and (3) the plaintiff must show that there is substantial likelihood that the requested relief will remedy the alleged injury." 548 S.W.3d 477, 485 (Tex. 2018).

Whether a plaintiff has sufficiently pleaded that the requested remedy will remedy the alleged injury can turn on whether the plaintiff has shown that the defendant has authority to respond to any requested injunctive relief. *Meyers*, 548 S.W.3d at 487. The supreme court recently addressed a dispute between a land developer and a county commissioner that is instructive here. *Id.* at 479. In *Meyers*, the developer of a master-planned community sought injunctive relief preventing one of the county commissioners from instructing the county engineering department to delay or impede plat or construction plans submitted by the developer. *Id.* at 482–83. Concluding that the commissioner lacked authority as a single commissioner to present or approve a completed plat application, the court held that the developer lacked standing to bring his claims against the commissioner. *Id.* at 488. In explanation of its holding, the court stated "there is no remedy the trial court could fashion against [the commissioner] that would afford relief as to [developer's] plat application." *Id.* The court also noted that the developer did seek relief against other governmental defendants who could remedy

7

its alleged injury. *Id.*

### 2. The landowner has not established standing

Not only must the landowner "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act," it must also show its injury is traceable to each of the defendants' conduct and that the requested remedy has a substantial likelihood of addressing its injury. *See Heinrich*, 284 S.W.3d at 372; *Meyers*, 548 S.W.3d at 485. The landowner directs its ultra-vires claims against seven county officials: the county judge, all four county commissioners elected to the Washington County Commissioners Court, the Washington County road and bridge department engineer, and the Washington County floodplain coordinator and environmental health director.[3] Each of these county officials has a distinct scope of authority.[4] However, the landowner does not address each county official's scope of authority.

The landowner states simply that "Washington County is responsible for maintaining the county road commonly known as Brazos River Lane." And

---

[3] We assume that all of the county officials are public officials. However, the parties do not raise the issue, so we do not decide it. Tex. R. App. P. 47.1.

[4] The county commissioners court has jurisdiction over all county business as conferred by the constitution and law. Tex. Const. art. V, § 18(b); *see* Tex. Loc. Gov't Code Ann. §§ 81.001–.034. Each county has four commissioners on the commissioners court with the county judge presiding over the county commissioners court. Tex. Const. art. V, § 18(b). The Transportation Code places the responsibility for maintaining public roads with the county commissioners court. Tex. Transp. Code Ann. § 251.003 (construction and maintenance of public roads). The county commissioners are the supervisors of the public roads in a county unless the county has adopted an optional system of administering the county roads under Transportation Code chapter 252. *Id.* § 251.004. Neither party has addressed whether the trial court took judicial notice of what method Washington County has adopted for administering the county roads. *See* Tex. R. Evid. 204. However, the landowner has named as a defendant the county road engineer, so it is possible that Washington County voters have adopted the county road department system of subchapter D. Tex. Transp. Code Ann. §§ 252.301–.314. If that is the case, then under a subchapter D county road department system, it is the county road engineer who is responsible to commissioners court for the construction and maintenance of county roads, with commissioners court as the policy-making body. *Id.* §§ 252.302(a), .309(a).

without any further detail, the landowner's petition goes on to state that the Brazos River Lane crosses over the natural tributary using a culvert, and the county officials have acknowledged their obligation to maintain Brazos River Lane and the culvert. The landowner does not attribute that acknowledgment to any particular county official.

The landowner alleges three ultra-vires claims against the county officials in its first amended petition. The first claim argues that the county officials had a ministerial duty to maintain and repair the blocked culvert, and their failure to maintain the culvert was in violation of the law. The claim asserts that the county officials violated the Water Code by impounding, diverting, and wasting state water without authorization (due to the blocked culvert). Tex. Water Code Ann. § 11.121. The landowner's third claim further asserts the county officials have caused and continue to cause the waste of state water in violation of the Water Code (due to the blocked culvert). Tex. Water Code Ann. § 11.093(a). All of the landowner's allegations that the county officials acted without legal authority stem from the alleged failure of the county officials to maintain the culvert on the landowner's property. The landowner does not explain who has a ministerial duty to maintain the culvert or the public road that crosses the landowner's property, nor does he reference the law defining the duties to be performed "with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Emmett*, 459 S.W.3d at 587. The landowner does not discuss the various duties or scope of authority that any of the named county officials have under Texas law. The only law cited by the landowner are the two sections of the Water Code cited above; however, the landowner does not explain what responsibilities or duties any of the county officials have with respect to the alleged Water Code violations. On the record before us, we cannot determine which county official is responsible for

9

maintaining the road or culvert at issue or whether there is any overlapping authority between the county officials. Therefore, we also cannot determine whether the landowner's alleged injury can be traced to any county official or officials, whether there is a substantial likelihood that the requested relief will remedy the alleged injury and whether the landowner has standing to sue each of the county officials.

The landowner's petition does not allege sufficient facts for this court to determine whether the landowner has standing to assert claims against any of the county officials and therefore whether there is subject-matter jurisdiction.[5] We conclude the landowner has not established that either its injury is "fairly traceable" to any of the specific county officials or there is a likelihood that the requested relief will remedy the alleged injury. When, as in this case, a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the plaintiff should be afforded the opportunity to amend the insufficient pleadings. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

## D.     The pleadings do not negate the existence of jurisdiction

The county officials do not make any arguments addressing the ultra-vires claims and the basis for the plea to the jurisdiction does not establish the trial court's lack of subject-matter jurisdiction. Construing the landowner's pleadings liberally in its favor, we conclude the landowner's petition does not demonstrate that the trial-court case should be dismissed for want of jurisdiction. *See Peek v.*

---

[5] We note that the landowner's live pleading in the clerk's record is the First Amended Petition and Application for Permanent Injunction. Though the landowner has already had the opportunity to amend its petition once, the landowner should have the opportunity to address the jurisdictional defects identified in this opinion. *See* Tex. R. Civ. P. 63 (providing for liberal amendment of pleadings); *see also Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 804 (Tex. 1989).

*Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 804 (Tex. 1989) ("Unless it is clear from the pleadings that the court lacks jurisdiction . . . , it should retain the case.").

## III.   CONCLUSION

We sustain the landowner's sole issue on appeal and reverse the interlocutory order of the trial court granting the plea to the jurisdiction.[6]


/s/    Charles A. Spain
Justice

Panel consists of Justices Wise, Bourliot, and Spain.

---

[6] Because this is an interlocutory appeal of the trial-court order granting the plea to the jurisdiction, only that order is before this court—not the entire trial-court case. We do not remand the case to the trial court because the case is not before us.

11